UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID F. WHITEHEAD,

    Plaintiff,                                Civil Action No. 18-12588

v.                                              HON.  GOERGE CARAM STEEH
                                                 U.S. District Judge
                                                 HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff David F. Whitehead ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #16] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on January 12 and 31, 2016 respectively, alleging an onset of disability date of January 6, 2015[1] (Tr. 11, 177). After the initial denial of benefits, Plaintiff requested an administrative hearing, held on September 12, 2017 in Lansing, Michigan before Administrative Law Judge ("ALJ") Christopher Ambrose (Tr. 24). Plaintiff, represented by attorney, Mark Farrell, testified (Tr. 30-108), as did Vocational Expert ("VE") David E. Huntington (Tr. 109-113). On January 17, 2018, ALJ Ambrose found Plaintiff not disabled (Tr. 11-20). On June 25, 2018, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on August 20, 2019.

## BACKGROUND FACTS

Plaintiff, born August 8, 1975, was 42 when the ALJ issued his decision (Tr. 20, 177). He completed 11th grade and worked previously as a frozen food manager and truck driver (Tr. 202) He alleges disability as a result of a back injury and arthritis (Tr. 201).

### A.   Plaintiff's Testimony

Plaintiff offered the following testimony:

Plaintiff had a daughter, 25 and son, 18 (Tr. 31). He was divorced and for the last six or seven years had lived in a trailer on his property (Tr. 33, 74). Since the onset of back problems, he made an unsuccessful four-day work attempt at a car wash (Tr. 34).

---

[1]The alleged onset of disability date was later amended to January 6, 2016 (Tr. 11, 196).

His former work as food manager required him to lift up to 60 pounds (Tr. 38). His back problem dated back to the age of 20 (Tr. 40). Prior to undergoing lumbar spine fusion surgery in February, 2016, he coped with condition by using a back brace, taking pain medication, and undergoing steroid injections (Tr. 41-42, 48). He experienced long-term left leg numbness (Tr. 48). He quit the food manager job to drive a truck for a septic company in an attempt to put less strain on his back (Tr. 43). He later discovered the septic company job required lifting of up to 100 pounds (Tr. 44). He obtained a commercial driving licence for the trucking job (Tr. 44-45). He was unable to return to the trucking job after undergoing the back surgery in February, 2016 due to his inability to perform "light duty" work involving sitting on a tractor for two to six hours a day (Tr. 46, 56, 58). During the unsuccessful work attempt at the septic company, he began experiencing ankle problems (Tr. 47-48).

Plaintiff was prescribed Percoset after undergoing the back surgery but did not become addicted to it (Tr. 51). He was able to read, write, and perform calculations (Tr. 59). He had been told by his surgeon that his condition would not improve until his back became bad enough to warrant another surgery (Tr. 63). He now experienced constant left-sided lower back pain with left lower extremity numbness (Tr. 63). He took Cymbalta for both pain and depression, Flexeril for his back, and arthritis medication (Tr. 71). At the time of the hearing, he had also experienced a recurrence of Irritable Bowel Syndrome ("IBS"), but his weight had remained stable (Tr. 73-74). He used food stamps to supplement his budget

(Tr. 74).

Plaintiff was unable to walk for more than 20 minutes at a time (Tr. 79). He was able to sit for a longer period provided that he was leaning against something but was unable to sit "straight up" for more than 15 minutes (Tr. 81). He took one nap a day but in addition, required up to two hours reclining time (Tr. 82). He was able to sleep well with the help of medication (Tr. 82). He experienced less "numbness and pain" since surgery (Tr. 83). He was unable to sit upright on a riding mower for the hour it took to mow his lawn (Tr. 84). He was able to keep up with his household chores and take care of his personal needs (Tr. 86). He did not smoke or drink (Tr. 87). He opined that he would be unable to perform sedentary work with a sit/stand "at will" option due to ankle pain caused by position changes (Tr. 87-89). He had recently been advised to undergo arthroscopic surgery of the ankle (Tr. 94). In response to questioning by his attorney, Plaintiff reiterated that his inability to work caused depression (Tr. 100). He was unable to hunt or fish (Tr. 103).

    **B.    Medical Evidence**

    **1. Records Relating to Plaintiff's Treatment**

September, 2015 records by Troy Davis, D.O. note Plaintiff's report of arthritis, joint pain, and joint stiffness (Tr. 234). Plaintiff demonstrated 5/5 strength in all muscle groups (Tr. 236). Dr. Davis noted "borderline radicular findings" in bilateral straight leg raising testing (Tr. 236). Plaintiff was prescribed Ultram (Tr. 239). Treating notes state that Plaintiff never filled a prescription for Flexeril (Tr. 239). The same month, an MRI of the

lumbar spine showed a disc bulge at L4-L5 with a central annular fissure and at L5-S1, "pronounced degenerative disc disease" with a diffuse disc bulge and end plate spurring (Tr. 245-246). In December, 2015, neurologist Dennis C. Dafnis, M.D. noted Plaintiff's report of a 20-year history of back pain with cortisone injection treatment (Tr. 249). Plaintiff declined physical therapy due to out-of-pocket costs of $170 per visit (Tr. 249). He reported gait abnormality, pain, numbness, and weakness (Tr. 250). EMG testing of the lower extremities showed "advanced and multi-level L2 root irritation consistent with . . . radiculopathy" (Tr. 250).

January, 2016 records by Anthony Cucchi, D.O. note that Plaintiff's condition was worsening (Tr. 255). Plaintiff reported significant pain standing or walking but no pain while sitting (Tr. 256). He exhibited an unstable gait and reduced lower extremity strength (Tr. 256). Dr. Cucchi noted that Plaintiff requested surgery instead of conservative treatment (Tr. 257-258). Records from the following month note that Plaintiff was advised to quit smoking before surgery (Tr. 296). He appeared fully oriented with a normal affect (Tr. 299).

In February, 2016, Plaintiff underwent lumbar decompression and fusion at L5-S1 without complications (Tr. 322, 344). Dr. Cucchi's April, 2016 post-surgical records state that Plaintiff was "doing reasonably well" with an occasional burning sensation in the lower left extremity which resolved with Flexeril (Tr. 318). August, 2016, Dr. Cucchi noted that Plaintiff was "doing well" six months after surgery but still experienced lower back swelling

and occasional pain and tingling of the left leg (Tr. 314). He denied pain standing, walking, or sitting (Tr. 315).

Dr. Davis' February, 2017 records note Plaintiff's report of continued back, ankle, and toe pain (Tr. 286). Dr. Cucchi's records from the same month note Plaintiff's report of left leg numbness and "tightness and pain" while working (Tr. 311). A March, 2017 MRI of the right ankle showed degenerative osteoarthritis with an osteochondral lesion of the talus and a subchondral cyst with surrounding edema (Tr. 272). Dr. Cucchi's records from the same month note a normal gait but significant pain upon standing, walking, or sitting (Tr. 309). Records from the following month note an antalgic gait with reports of continued right ankle pain (Tr. 303). Plaintiff was prescribed a tall cast boot and crutches (Tr. 305). May, 2017 records note intermittent "mild-moderate" ankle pain (Tr. 326). Arthroscopy of the right ankle was recommended "when it fits into [Plaintiff's] life schedule" (Tr. 328). Dr. Davis' June, 2017 records note Plaintiff's report of anxiety and Post Traumatic Stress Disorder ("PTSD") resulting from a traumatic childhood (Tr. 277-278). Dr. Davis noted that Plaintiff had stopped his long-term "psych" medication (Tr. 278). Plaintiff appeared fully oriented with intact judgment but an anxious affect (Tr. 279). Dr. Davis prescribed the antidepressant of Fluoxetine (Tr. 279).

In September, 2017, Dr. Cucchi noted Plaintiff's report that he was "better than before surgery" but experienced "pain and tightness" of the back upon activity and constant tightness in the foot (Tr. 364). Plaintiff reported significant pain while standing, walking,

and sitting (Tr. 365). He exhibited a normal gait but tenderness of the low back (Tr. 365). He was diagnosed with L4-L5 spondylosis and left lower extremity radiculitis (Tr. 366). Dr. Cucchi found that Plaintiff was unable to sit or stand for more than 30 minutes at a time and was incapable of standing or walking more than two hours in an eight-hour workday (Tr. 368). He found that Plaintiff was required to walk every 50 minutes for 15 minutes at a time then rest for 15 minutes before returning to work (Tr. 369). He limited Plaintiff to lifting less than 10 pounds on an occasional basis and occasional postural activity (Tr. 369). He found that Plaintiff would be off task for approximately 20 percent of the workday and would miss more than four days of work each month (Tr. 370).

### 2. Non-Treating Records

In April, 2016, Thomas Chiambretti, D.O. performed a non-examining physical examination of Plaintiff on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for about six hours in an eight-hour workday; and push and pull without limitation (Tr. 119). Dr. Chiambretti precluded all climbing of ladders, ropes, and scaffolds but found that Plaintiff was otherwise capable of occasional postural activity (Tr. 120). He found that Plaintiff should avoid all exposure to wetness and avoid even moderate exposure to hazards such as machinery and heights (Tr. 121).

### C. Vocational Expert Testimony

VE Huntington classified Plaintiff's former work as a food department manager as

skilled and exertionally heavy; septic tank driver, semiskilled/medium; and septic tank work semiskilled/heavy[2] (Tr. 109-110). The ALJ posed the following question to VE Huntington, describing a hypothetical individual of Plaintiff's age, education, and work background:

> The individual would only be able to do sedentary work. So, lift up to 10 pounds occasionally. Stand and walk for about two hours. Sit for up to six hours in an eight-hour workday with normal breaks but, also, need a sit/stand option. But he would not be off task for more than 10 percent of the work period which is, basically six minutes per hour. So, he could spend a minute and a half changing positions every 15 minutes, however you want to break it down, but it's not more than 10 percent of the work period would he be off task in order to sit and stand at will. Also, there would be no ladders, ropes, or scaffolds. Only occasional ramps or stairs. Occasional balance, stoop, kneel, crouch and crawl. Furthermore, he would need to avoid all use of moving machinery, all exposure to unprotected heights (Tr. 110).

The VE testified that while the above described individual would be unable to perform Plaintiff's past relevant work, he could perform the sedentary, unskilled work of a telephone quotation clerk (57,000 jobs in the national economy); addressing clerk (22,000); and document preparer (62,000) (Tr. 111). He testified that the need to be off task at least 20 percent of the day to recline, or the need to miss three days of work each month would preclude all competitive work (Tr. 111-112). He stated, in effect, that his testimony was

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

consistent with the information found in the *Dictionary of Occupation Titles* ("*DOT*") but noted that the *DOT* was silent as to the effect of a sit/stand option on a job qualification (Tr. 112). He stated that his testimony regarding the sit/stand option was based on his own professional experience (Tr. 112).

### D.     The ALJ's Decision

ALJ Ambrose found that Plaintiff experienced the severe impairments of "status post lumbar fusion with continued radiculopathy into left lower extremity and right ankle degenerative joint disease" but that neither of the impairments met or equaled an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14-16). The ALJ found that the condition of anxiety was non-severe, concluding that the psychological condition did not cause even mild work-related limitation (Tr. 15-16).

The ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") for sedentary work with the following additional limitations:

> [H]e needs a sit/stand option at will provided [he] is not off task more than 10 percent of the work period. The claimant can climb no ladders, ropes or scaffolds. He can occasionally climb ramps or stairs. The claimant can occasionally balance, stoop, kneel, crouch and crawl. He must avoid all use of moving machinery and exposure to unprotected heights (Tr. 16).

Citing the VE's job findings, the ALJ found that while Plaintiff was unable to perform his past relevant work, he could perform the jobs of telephone quotation clerk, addressing clerk, and document preparer (Tr. 18-19, 111).

The ALJ cited the September, 2015 MRI of the lumbar spine and December, 2015

EMG studies of the lower extremities showing LS root irritation (Tr. 14). He cited Dr. Cucchi's January, 2016 findings lower extremity weakness and other neurological abnormalities (Tr. 14). He acknowledged a February, 2017 diagnosis of right ankle osteoarthritis (Tr. 14). However, the ALJ noted that as of August, 2016, Plaintiff reported that he was doing well following back surgery and did not experience problems standing, walking or sitting (Tr. 17). He noted that Plaintiff did not report ankle pain until February, 2017 (Tr. 17).

The ALJ gave "little weight" to Dr. Cucchi's September, 2017 opinion that Plaintiff experienced disability-level limitation on the basis that it was inconsistent with the surgeon's own treating notes and the record as a whole (Tr. 17). For differing reasons, he also accorded little weight to Dr. Chiambrette's non-examining finding that Plaintiff could perform exertionally light work, finding that the record supported a finding that Plaintiff was limited to sedentary work due to back and ankle problems (Tr. 17). He noted that Plaintiff's account of his own activities was not inconsistent with the RFC for a range of sedentary work (Tr. 17).

## **STANDARD OF REVIEW**

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed.

126 (1938))(emphasis deleted). The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

In his sole argument for remand, Plaintiff contends that the ALJ erred by rejecting the allegations of physical limitation. *Plaintiff's Brief,* 27-30, *Docket #15,* Pg ID 441. He argues that the determination that he was not disabled fails to account for his degree of limitation prior to the February, 2016 surgery or the more recent limitations resulting from the right ankle condition. *Id.*

SSR 16–3p sets forth the standard for evaluating the alleged limitations using a

two-step process. 2016 WL 1119029, at *3 (Mar. 16, 2016). First, the ALJ determines whether the claimant has a medically-determinable impairment that could reasonably be expected to produce the alleged pain or limitation. *Id.* at *3. Second, the ALJ must evaluate claims of limitation not reflected in the objective evidence. *Id*. at *3-4. The ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."[3] *Id.* at *4. In other words, whether the record as a whole reflects the claimant's professed degree of limitation.

As to the first prong of SSR 16-3p, Plaintiff does not dispute the ALJ's finding that the conditions of left lower extremity radiculopathy and right ankle degenerative joint disease caused some degree of work-related limitation (Tr. 14). However, he contends that the objective medical evidence, coupled with his limited activities of daily living, support his allegations that the back and ankle conditions precluded even sedentary work. *Plaintiff's Brief* at 29.

---

[3] 20 C.F.R. 404.1529(c)(3) lists the factors to be considered in addressing the second prong of SSR 16-3p: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

The ALJ's finding that the record as a whole did not support the professed degree of physical limitations is supported by substantial evidence and well explained (Tr. 17-18). As a threshold matter, Plaintiff's claim that the ALJ did not consider his limitations prior to the February, 2016 surgery is mooted by the fact that prior to the hearing, Plaintiff amended his alleged onset date to January 6, 2016. Given that Plaintiff did not allege disability until 2016, the ALJ did not err in declining to discuss the 2015 records in more detail.

As to the records created after the amended alleged onset of disability date, the ALJ noted that six month after the February, 2016 fusion surgery, Plaintiff reported only occasional pain and left-sided radiculopathy (Tr. 17). He cited Plaintiff's report that he did not experience difficulty standing, walking, or sitting (Tr. 17). The ALJ noted that Plaintiff did not report right ankle pain until February, 2017 (Tr. 17).

The ALJ also noted that the RFC for a limited range of sedentary work was "generally consistent" with Plaintiff's own description of his daily activities (Tr. 17). In May, 2016 Plaintiff reported that he experienced back pain "even when I sit in one spot too long" and was unable to stand for long periods (Tr. 208, 210)(spelling altered). Plaintiff's report is consistent with the RFC for work allowing for a change of position at any time (Tr. 16). Plaintiff's report that he had trouble bending is reflected in the RFC restricting him to occasional stooping (Tr. 209). *See* SSR 83-14 1983 WL 31254, at *2 (January 1, 1983)("stooping" defined as "bending the body downward and forward by bending the spine at the waist"). Plaintiff's ability to drive a car for at least short distances implies that he was

able to sit for at least a few minutes at a time and consistent with the sit/stand at will option in the RFC (Tr. 211). Plaintiff's report that he was unable to lift more than 10 pounds is reflected in the RFC's limitation sedentary work (Tr. 213); § 404.1567(a). Thus, the ALJ's rationale for partially discounting the allegations of limitation does not provide grounds for remand. *See Cruse v. Commissioner of Social Security*, 502 F.3d 532, 542 (6th Cir. 2007)(ALJ's weighing of the allegations of limitation are entitled to "great weight")(*see also Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989) )(*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

While Plaintiff also disputes the discounting of Dr. Cucchi's September, 2017 disability opinion, the ALJ's accord of "little weight" to the treating opinion is adequately supported and explained (Tr. 17-18). Notably, the RFC for sedentary work is somewhat consistent with Dr. Cucchi's limitation to sedentary work aside from his finding that Plaintiff would be off task for 20 percent of the day and would miss more than four days of work each month (Tr. 16, 368-370). The ALJ permissibly discounted Dr. Cucchi's more extreme limitations on the basis that they were contradicted by Dr. Cucchi's own treating notes and the record as a whole (Tr. 17). The ALJ noted that treating records from the same month as the opinion was written note a normal physical examination except for "tenderness of the back" (Tr. 17-18); *see* § 404.1527(c)(2)(treating opinion can be discounted so long as "good reasons" are provided). My own review of the records shows that despite the February, 2017

diagnosis of the ankle condition, Plaintiff reported in September, 2017 to Dr. Cucchi that he was "better than before [the February, 2016] surgery" (Tr. 364).

On a related note, while Plaintiff contends that the ALJ was "dismissive" of the allegations of right ankle problems, the ALJ acknowledged that Plaintiff first complained of ankle pain in February, 2017 (Tr. 14). He cited the MRI of the right ankle from the following month showing degenerative osteoarthritis (Tr. 14). He acknowledged that the ankle condition was a severe impairment (Tr. 14). However, the ALJ cited records from April, 2017 forward showing only a mildly antalgic gait (and at other times, a normal gait) and normal right ankle strength (Tr. 18). The RFC for primarily sitting work with a sit/stand option adequately addresses Plaintiff's report of ongoing right ankle pain (Tr. 364).

For the period under consideration, the RFC for exertionally sedentary work falls within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen, supra*. However, my recommendation to uphold the Commissioner's decision should not be read to trivialize the limitations created by the back and ankle conditions or Plaintiff excellent work history. I note that Plaintiff received steroid injections for the back condition beginning at the age of 20 and the present record (at a minimum) allows for the possibility that the degenerative disc disease of the lumbar spine and osteoarthritis of the ankle will continue to worsen with time. Accordingly, Plaintiff is not prevented from reapplying for benefits if he believes that his condition has worsened subsequent to the January 17, 2018 administrative decision.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Docket #16] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Dated: July 30, 2019                s/R. Steven Whalen
                                    R. STEVEN WHALEN
                                    UNITED STATES MAGISTRATE JUDGE

### CERTIFICATE OF SERVICE

I hereby certify on July 30, 2019 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 30, 2019.

                                    s/Carolyn M. Ciesla
                                    Case Manager for the
                                    Honorable R. Steven Whalen